# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| DAVID OCHOA, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>   Defendant. ) | NO. EP-10-CV-00165-RFC<br>(by consent) |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge; the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying his claims for supplemental security income under Title XVI of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff was born on September 7, 1949, and was age fifty-eight at the time of the Administrative Law Judge's ("ALJ") decision in this case. (R:10, 19, 79)[1] Plaintiff has a ninth grade

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the transcript of the record of administrative proceedings filed in this case, (Doc. 18), is designated by "(R:[page number(s)])".

education, and a general equivalency degree (GED), he can do basic math computations, and he can read and write in English. (R:23) He has past work activity as a warehouse laborer. (R:92-93)

## PROCEDURAL HISTORY

On November 16, 2006, Plaintiff filed an application for supplemental security income alleging impairments that became disabling on January 1, 2004. (R:79) The application was denied initially and on reconsideration. (R:6, 35-36, 39-47) Plaintiff filed a request for a hearing, which was conducted on November 6, 2008. (R:16-34, 48) The ALJ issued his decision on January 30, 2009, denying benefits. (R:3-10) Plaintiff's request for review was denied by the Appeals Council on January 8, 2010. (R:11-15)

On May 3, 2010, Plaintiff submitted his complaint and a motion to proceed *in forma pauperis*. (Docs. 1-4) Plaintiff's motion was granted and the complaint filed. (Docs. 5-7) The Commissioner filed an answer on July 22, 2010; a certified copy of the transcript of the administrative proceedings was received on July 23, 2010. (Docs. 14, 18) On October 25, 2010, Plaintiff filed his brief in support of his complaint. (Doc. 22) On November 18, 2010, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 27)[2]

## ISSUES

Plaintiff claims both that the record does not contain substantial evidence to support the ALJ's finding that Plaintiff is not disabled and that the ALJ's decision is the result of legal error.

---

[2] This cause was initially referred and then reassigned by United States District Court Judge David Briones to then Magistrate Judge Margaret F. Leachman. (Docs. 5, 16) It was then transferred to Magistrate Judge Richard P. Mesa. (Doc. 23) Finally, it was transferred to this Court on April 5, 2011. (Doc. 28) The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding the appeal. (Docs. 29-31)

(Doc. 22:2) Plaintiff argues that the ALJ erred in finding that Plaintiff does not suffer from a medically determinable impairment. (*Id*.) He requests that the ALJ's decision be reversed and the cause remanded for additional administrative proceedings. (*Id*. at 5)

## DISCUSSION

### A. *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, the Court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial-evidence standard, the court must carefully examine the entire record, but may not re-weigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because

substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## B.     *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity ("RFC") is what he can still do despite his limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

## C.   The ALJ's Decision

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 16, 2006. (R:8) At the second step, the ALJ found that Plaintiff had hypertension which was well-controlled by medication. (*Id*.) He noted that Plaintiff had been seen in the emergency room in 2007 for chest pain which was determined to be non-cardiac in nature. (*Id*.) Although Plaintiff alleged he suffered from an anxiety disorder, there was no record of mental health treatment or prescription of psychotropic medication. (R:9)

The ALJ also discussed Plaintiff's allegations of back pain. The results of Plaintiff's June 2007 x-ray of his back, showed "mild degenerative changes at L3-L4 with no evidence of any compression deformity or malalignment, a small marginal spur and facet arthrosis at L4." (R:9) Plaintiff had not received even conservative treatment for back pain: he took only over-the-counter ibuprofen for back pain, and had not been prescribed pain medication for his back, and had not been referred for physical therapy or further evaluation by a specialist. (*Id*.) Treatment records mostly showed normal musculoskeletal exams with rare mention of back pain. (*Id*.)

The ALJ summarized Plaintiff's claims and found that the medical evidence of record simply did not support the allegations. (*Id*.) He concluded that there were "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (R:8-9) Consequently, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R:9)

## D.   Analysis

Plaintiff claims that the medical evidence reflects Plaintiff's frequent complaints of back pain and frequent diagnosis of back impairments, including Vertebral Arthritis, Ankylosing Spondylosis,

Osteopenia, and Degenerative Disc Disease. (Doc. 22:3 (citing R:192, 201, 248, 264-83)) Plaintiff also argues that objective medical testing, specifically an x-ray of Plaintiff's lumbar spine taken on June 26, 2007, supports the diagnosis of Ankylosing Spondylosis. (Doc. 22:4) He complains that the ALJ did not explain why such evidence was not sufficient to establish a medically determinable impairment of Ankylosing Spondylosis.[3] (*Id*.) He contends that the ALJ's determination is therefore unsupported by substantial evidence and the result of legal error. (*Id*.)

The Commissioner contends that the ALJ properly relied on Plaintiff's medical records, an absence of observable abnormalities in Plaintiff's spine, and absence of a confirmed diagnosis, to conclude that no medically determinable impairment was present. (Doc. 27:5)

As stated above, disability under the act is the inability to perform substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). A medically determinable impairment results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id*. Signs "are anatomical, physiological, or psychological abnormalities which can be observed, apart from

---

[3] Plaintiff does not challenge the ALJ's determination regarding Plaintiff's allegations of anxiety disorder or uncontrolled hypertension. (Doc. 22) The state agency physician completing the psychiatric review technique on May 26, 2007, determined that there was no medically determinable psychological impairment. (R:214, 226) The state agency physicians reviewing Plaintiff's case on initial review and reconsideration found that Plaintiff had a medically-determinable impairment of hypertension, but found it to be non-severe. (R: 35, 36, 186, 228) Most of Plaintiff's medical records pertain to ongoing treatment for hypertension; the ALJ found that Plaintiff's hypertension was well-controlled. (R:8) A condition that can be controlled by medication is not disabling. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988).

[a claimant's] statements (symptoms). [They] must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 416.928(b). Laboratory findings "are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques[,]" including x-rays. 20 C.F.R. § 416.928( c).

Plaintiff's subjective report of symptoms is insufficient to establish a medically determinable impairment. 20 C.F.R. § 416.908. Nor does the listing of an assessment or diagnosis alone establish a medically determinable impairment; the medical evidence must contain documentation of the appropriate medical signs, symptoms, and laboratory findings to support the assessment or diagnosis. *Id*.

### 1. Medical Evidence of Record

The medical evidence of record does reflect that Plaintiff complained of back pain on several occasions, and that assessments for such complaints were noted. There is no mention of back pain in Plaintiff's medical records prior to April 25, 2007.

When his application was initially reviewed by a state agency physician, on March 12, 2007, it was noted that no medical evidence of record was found supporting Plaintiff's back/neck pain so a consultation examination was ordered and rescheduled and Plaintiff did not attend either appointment; Plaintiff was given a technical denial. (R:35, 186) There is no consultative examination report in the record.

On April 25, 2007, Plaintiff appeared for lab results and complained of back pain with an intensity of 8/10; the doctor noted that Plaintiff's back was tender in the sacral area and assessed back pain and vertebral arthritis, but did not order any tests. (R:190-92)

When his application was reviewed on reconsideration by a state agency physician, on May 29, 2007, no evidence was listed regarding Plaintiff's alleged neck and back pain and the conclusion was that Plaintiff's alleged limitations were not fully supported by the evidence of record; his application was denied as non-severe impairment of essential hypertension with no secondary diagnosis established. (R:36; 228).

On June 20, 2007, Plaintiff appeared for medication refills and complaints of lower back pain with an intensity of 7/10 localized and centered in the sacral area of back, for which he was taking Motrin; the doctor assessed probable Ankylosing Spondylosis and ordered x-rays. (R:282-83)

The June 26, 2007, x-ray of Plaintiff's lumbar spine states:

> The study demonstrates osteopenia. There is small marginal spur suggesting osteoarthritic changes. There is mild disc disease with loss of disc height at L3-L4. There is no evidence of any compression deformity or malalignment. There is facet joint arthrosis seen at L4 bilaterally.
>
> IMPRESSION:
> 1. DISC DISEASE AT L3-L4
> 2. OSTEOPENIA
> 3. MARGINAL SPUR SUGGESTING OSTEOARTHRITIC CHANGES
> 4. WE WOULD RECOMMEND A BONE DENSITY, WHICH CAN BE PERFORMED AT EL PASO VINTON DIAGNOSTIC OFFICE.

(R:281) The x-ray of Plaintiff's pelvis, taken the same day, was normal with no radiographic evidence of fracture or bony abnormality, no osteolytic or blastic lesions, and a normal soft tissue outline—impression: normal AP pelvis. (R:280)

On July 30, 2007, Plaintiff appeared for medication refills and to review the x-ray results; he reported pain in his back and knee and cramps in his fingers and lower legs. (R:277) The doctor assessed osteopenia, vertebral, and referred Plaintiff for a Dexa bone scan of the lumbar vertebrae. (R:278)

On August 28, 2007, Plaintiff appeared for medication refill, no pain was reported, but Ankylosing Spondylosis was included in the assessments. (R:275-76)

On October 10, 2007, Plaintiff appeared for a medical refill, and reported that pain was not a problem at that time; Ankylosing Spondylosis was included in the assessments. (R:273-74)

On November 8, 2007, Plaintiff appeared for medication refill, and also reported a constant back pain with an intensity of 8/10, for which he was taking ibuprophen, but requested a prescription; the doctor assessed "back pain/ankylosing spondylosis" and prescribed motrin. (R: 248, 271-72)

On December 10, 2007, Plaintiff appeared for medication refill, complained of constant and ongoing low back pain with an intensity of 6/10, listing Motrin as a relieving factor; the doctor assessed "DDD" (degenerative disc disease) and "OA" (osteoarthritis), increased his Motrin prescription, and again ordered a Dexa bone density scan to evaluate osteopenia. (R:248, 269-70)

On January 9, 2008, Plaintiff appeared for medication refill, Plaintiff reported having no pain, and taking Ibuprophen four to five times a day, everyday; the doctor's assessment continued to list Ankylosing Spondylosis and noted that Plaintiff was not interested in trying an arthritic. (R:267-68)

On February 12, 2008, Plaintiff appeared for medication refill and reported low back pain with an intensity of 6/10; the doctor's assessment included Ankylosing Spondylosis. (R:264-65)

On March 14, 2008, Plaintiff appeared for medication refill, reported having no pain, and was not assessed with back pain, DDD, OA, or Ankylosing Spondylosis. (R:262-63)

On April 14, 2008, Plaintiff missed an appointment. (R:261)

On April 16, 2008, Plaintiff appeared for medication refill and reported having no pain; the doctor's assessment included "back pain." (R:259-60)

9

On May 19, 2008, Plaintiff appeared for medication refill, reported having no pain, and was not assessed with back pain, DDD, OA, or Ankylosing Spondylosis (R:257-58)

On May 29, 2008, Plaintiff appeared for a lipid lab result follow-up, reported having no pain, and was not assessed with back pain, DDD, OA, or Ankylosing Spondylosis. (R:255-56)

On June 18, July 17, and August 22, 2008, Plaintiff appeared for medication refill, reported having no pain, and was not assessed with back pain, DDD, OA, or Ankylosing Spondylosis. (R:249-54)

### 2. Legal Error

As outlined above, a medically determinable impairment must be established by not merely symptoms, but signs—findings from medically acceptable clinical diagnostic techniques, and laboratory findings (including x-rays). 20 C.F.R. §§ 416.908, 416.928(b), (c). The only record potentially reporting a clinical sign is the doctor's note on April 25, 2007, that Plaintiff's back was tender in the sacral area, but no mention was made regarding what clinical diagnostic technique was used to ascertain this. (*See* R:192) There are no other potential clinical findings contained in the record. The only laboratory findings in the medical evidence of record are Plaintiff's x-rays from June 2007. (*See* R:280-81) Plaintiff argues that the ALJ committed legal error in failing to explain why the x-ray was not sufficient to establish that Plaintiff had a medically determinable impairment of Ankylosing Spondylosis. (Doc. 22:4) Plaintiff does not identify a regulation on which his claim of legal error is based.

Plaintiff argues that his records contained multiple diagnoses for his back pain, the most common being Ankylosis Spondylosis, and that x-rays constitute acceptable diagnostic techniques for demonstrating the existence of a medically determinable impairment. (Doc. 22:3-4) The ALJ

did not find that the x-ray evidence failed to establish a medically determinable impairment because an x-ray is not a valid diagnostic technique for doing so, but that the results of the x-ray were insufficient. (R:9) Therefore, this argument does not establish legal error.

The regulations require an ALJ to consider and weigh all medical opinions, including physician statements reflecting judgments about the nature and severity of your impairments, which include diagnoses. 20 C.F.R. § 416.927(a)(2). The regulations provide "[w]e will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 416.927(d)(2). The ALJ did not mention any of the various assessments stated in Plaintiff's medical records by Plaintiff's treating physician, and therefore, failed to explicitly ascribe a weight to such medical opinion, or explain why the assessments were not established by the x-rays. (R:9) The ALJ's discussion did address some criteria required by the regulations in weighing medical opinions, namely supportability, consistency, and specialization, though it was in addressing Plaintiff's allegations and not the physician's assessments. 20 C.F.R. § 416.927(d); (R:9).

The failure to consider an opinion or statement may constitute harmless error. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). This Court will remand for further proceedings only where the procedural imperfection casts doubt on the existence of substantial evidence to support the ALJ's decision of non-disability. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

11

Although the ALJ failed to specifically address the assessments listed by Plaintiff's treating physician, the Court finds that any error is harmless in this instance, as discussed further below. The Plaintiff's argument that the x-ray results should have been found to establish a medically determinable impairment challenges the sufficiency of evidence to support the ALJ's determination that Plaintiff is not disabled. This argument is addressed below.

3. **Did Plaintiff's X-rays Establish a Medically Determinable Impairment?**

Plaintiff claims that the ALJ's determination that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment is not supported by substantial evidence, because his x-rays provided evidence of the medically determinable impairment of Ankylosing Spondylosis. (Doc. 22:3-4)

The Commissioner asserts that a diagnosis of ankylosing spondylitis must be confirmed by both a rheumatoid factor test and by x-rays showing changes in the sacroiliac joints, neither of which were contained in Plaintiff's medical evidence. (Doc. 27:5, citing Merck Manual 1334 (16th ed. 1992)) Plaintiff has not challenged this assertion.

In the Merck Manual for Health Care Professionals, available online,[4] the diagnosis of Ankylosing Spondylitis is based on symptoms, lumbosacral spine imaging, and either blood tests, including ESR, C-reactive protein, and CBC, or explicit clinical criteria such as the modified New York criteria [which involves measuring range of motion of the spine forward, back, and side to side]." Merck Manual (2008). While the manual indicates that none of the blood tests, alone, are confirmation of a diagnosis, results can increase suspicion for the disorder or rule out other disorders

---

[4] Http://www.merckmanuals.com/professional/sec04/ch036/ch036c.html#905917 (Last full review/revision February 2008 by Roy D. Altman, MD)(last viewed July 19, 2011)

that can simulate Ankylosing Spondylitis—if Ankylosing Spondylitis is suspected, imaging should be done; demonstration of sacroilitis on an x-ray strongly supports the diagnosis of Ankylosing Spondylitis. *Id*. Alternatively, if there is imaging-study evidence of sacroilitis, Ankylosing Spondylitis can be diagnosed with one of the following: restriction of lumbar spine motion, restriction of chest expansion, or a history of inflammatory back pain. *Id*. A CT and MRI may show changes earlier than an x-ray. *Id*.

Plaintiff's x-ray impressions do not mention sacroilitis. (R: 280-81) Plaintiff has pointed to no blood test in the record that would support the physician's assessment of Ankylosing Spondylosis. There are no clinical notes in evidence reflecting a restriction of lumbar spinal motion. Nor does the Merck Manual indicate that osteopenia,[5] marginal spurs, facet joint arthrosis, or loss of disc height support a diagnosis of Ankylosing Spondylosis.

The Court notes, however, that the ALJ did not have the benefit of any state agency or consulting physician reviewing the x-ray results to determine whether they support or establish any of Plaintiff's treating physician's various assessments. The Fifth Circuit has recognized the Seventh Circuit's admonishments to ALJs against "playing doctor" and making their own independent medical assessments. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). However, as in *Frank v. Barnhart*, the Court declines to reach the merits of whether the ALJ erred in failing to find a medically determinable impairment

---

[5] Osteopenia refers to a bone mineral density ("BMD") that is lower than normal peak BMD, which may be due to an individual naturally having a lower BMD. *See* www.webmd.com/osteoporosis/tc/osteopenia-overview (Last viewed July 19, 2011). It may result from the natural process of bone loss with age, or may be caused by a wide variety of other conditions, disease processes, or treatments. *Id*. Osteopenia is not related to pain and is diagnosed with a BMD test. *Id*.

based on Plaintiff's x-ray results. *See id.* Even assuming the ALJ erred in his finding, the error would be harmless, as discussed below. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)(applying harmless error analysis in disability benefits context).

### 4. Substantial Support for ALJ's Determination of Non-Disability

Even if the x-ray results were to establish Ankylosing Spondylosis, or any other medically determinable impairment, the ALJ's determination that Plaintiff is not disabled, is supported by substantial evidence.

There is no medical evidence in the record reflecting any functional limitation resulting from Plaintiff's alleged back pain. While pain alone can be disabling, this is only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990) (citations omitted). Plaintiff complained of back pain from April 2007 to July 2007 (4 months), reported no pain from August to October 2007 (3 months), reported back pain again in November and December 2007 (2 months), had no pain in January 2008, had pain again in February 2008, and reported having no pain from March to August 2008 (6 months). Based on these records, there is substantial evidence that Plaintiff's back pain was reasonably controlled by medication. Medical impairments that can reasonably be remedied or controlled by medication or treatment are not disabling. *Johnson v. Bowen*, 864 F.2d at 347.

Further, a Plaintiff's failure to seek treatment is an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ noted that no additional treatment had been sought, prescribed, or received. (R:9) Plaintiff did not seek treatment beyond reporting his pain, asking for a prescription, and appearing for the scheduled x-ray; he did not obtain a bone density scan when referred for one, was not interested in trying an arthritic when discussed by his physician,

and failed to attend his consultative examinations, which is itself grounds for denial. (R:186, 268); 20 C.F.R. § 416.918 ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination ..., we may find that you are not disabled or blind.").

Further, Plaintiff testified that he sleeps on a very thin mattress on the floor. (R:21-22) He also testified that he had continued to work through a temporary agency cleaning apartments and doing some light construction work until three months before his hearing on November 6, 2008. (R:21-22, 24) Plaintiff, however, did not provide any medical evidence from that three-month time period to indicate that he had complained of, sought, or received treatment for back pain or Ankylosing Spondylosis during that time. It is initially the plaintiff's burden to present evidence establishing disability; Plaintiff did not carry the burden.

Any error in the ALJ's failure to explicitly address the treating physician's assessments and the weight given to them, or to obtain an expert opinion regarding whether the x-rays established such the conditions assessed, based on the record described above, is harmless. The ALJ's ultimate determination that Plaintiff is not disabled is supported by substantial evidence. Plaintiff is not entitled to reversal.

## CONCLUSION

The Court concludes that any deviation from the relevant legal standards was harmless and the ALJ's decision is supported by substantial evidence. Based on the foregoing, it is hereby **ORDERED** that the Commissioner's determination be **AFFIRMED**.

**SIGNED** and **ENTERED** on July 25, 2011.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE